This is Illinois Department of Central Management Services v. The Illinois Labor Relations Board, 4090491. We have for the appellant, Lawrence J. Weiner, and for the appellee, Sharon Purcell. It's quite pleased the court, as always. This case really involves a rule that we submit as pretty clear and unambiguous to the extent there is any ambiguity. It's been resolved in two cases, the City of St. Charles and the Cook County State's Attorney's decision. What's really involved here is an attempt by the labor board to rewrite the regulation, and I'll demonstrate that in a moment. The rule says, and I think it's very, very important to go back to the language of the rule, service of a document upon a party by mail shall be presumed complete three days after mailing, if proof of service shows the document was properly addressed. This presumption may be overcome by the addressee, not the addressee, with evidence establishing that the document was not delivered or was delivered at a later date. Now, what is really being proposed to you here by the labor board is to rewrite that regulation, to read something like, I tried my hand at it, I'm not a good legislator, but the way I think they're wanting it to be rewritten is, service of a document upon a party by mail shall be complete upon the actual receipt of the document, or absent evidence of actual receipt or no receipt three days after mailing. That's the way they want this regulation to read. In fact, in their briefs, they actually state to this court that rewritten version. They don't quote it. Page 19 of the brief, of the states, of the ILRB's brief, says in section 230C, the board defines service when it is effected by mail as occurring as of the date of the receipt. Well, there's nothing, you notice, there's nothing, it's not the date of the receipt. And it provides a method by which to determine the date of service when that date is an issue. Mr. Reiner, true or false, did the document have to be postmarked on or before a certain date? Not according to the, not according to the city of St. Charles. Oh, did it have to be postmarked? Yes. I'm not worried about delivery, I'm worried about postmark. Yes. And that date was December 31st, right? No. That date was January 2nd. No, no, it was supposed to have been postmarked by what date? Well, if you read the rule, it's January 2nd. That's what the city of St. Charles says. It says that it's three days after the, it's 14 days plus three days after the date of mailing. The city issued, these were, the arguments raised to you today are exactly the same arguments raised in the city of St. Charles case. Let me read what the court said in the city of St. Charles. This is a recent case, it's October 8th, 2009. I believe that there's a petition for a leave of penitent in this case. It states the ILRB's petition has been denied. So this is a final decision, and the court says by providing for the presumption of service three days after mailing, these regulations in order to the benefit of the addressor, in this case the ILRB, the presumption establishes effective notice and the burden shifts to the addressee to establish with sufficient evidence that actual delivery occurred at a later date. The rule allows an addressee, the city, to demonstrate that the document was not received within three days or never received at all. The rule does not allow the ILRB to do what it has done to overcome the presumption of service by mailing. The ILRB's interpretation can be supported only by reading an implicit clause into the regulation, i.e. that actual service triggers the 14-day countdown for the deadline, and that the addressor has the right and authority to establish actual service in order to preclude the presumption from taking effect. We fail to find any explicit statement that actual service precludes the presumption from arising, or that the addressor has the right or authority to establish the actual date of service in order to preclude the presumption from arising or applying as to the effective date of the mailing. That's this case, and it's the exact same arguments that are being raised to you today, and were rejected. They were raised in the City of St. Charles case. So, in response to Your Honor's question, according to the interpretation by the court in the City of St. Charles, it was due to be postmarked on January 2nd, and it was. In order to rule in favor of the ILRB, you have to reject the City of St. Charles, because it would be an absolute four points on hammer-on-the-nail rejection. And are we bound by the Second District? Of course not. Of course you're not bound by the Second District. But the reasoning is valid. As I said, what they're trying to do is rewrite. I'll give you another example of the way they're trying to rewrite it. Page 19. However, the current language of Section 1230C provides a presumptive date of receipt three days after mailing, and it allows, this is on page 20, the addressee to overcome the presumption of service if it can show that the document actually was not received during the time period. Again, page 20. Under Section 1230, as it currently exists, the date of actual receipt of a document controls when service is effective. Not so. Not so under the language. Not so under the City of St. Charles case. Not so. Why are they putting that in the brief? It's a misstatement of the actual rule itself and the ruling in St. Charles. But forget the ruling in St. Charles. It's a misstatement. The rule doesn't say that. Here's another thing, page 20 later. And Section 1230 provides a rebuttable presumption that where the actual fact of service is not established is deemed to be effective three days after the mailing. There's nothing in that rule about the actual date of service. Again, page 21. As the date of receipt controls when service is effective. That's not true. And I don't mean not true. I mean it's not reflected in the regulation itself. They're rewriting it. They're even rewriting it in their brief. They're telling you something that isn't true. Counsel, I find it offensive that you're being critical of the legal arguments being made here. This is a technical issue. And it is something that, frankly, my whole office was up in arms about. Which way? Which way? How do you interpret this language? St. Charles is to your benefit. And PLA has been denied. But good faith arguments, legal arguments by counsel, I don't think should be attacked in that fashion. I apologize if the Court was offended. I didn't mean to. What I'm saying is it's a matter of logic and rationality. And actually reading the plain language of the regulation, it doesn't say that it shall be upon actual receipt. There's no language of that nature whatsoever. None. But that's not our only basis for prevailing. The fact is that there are other regulations. And the regulation in particular that we rely upon is 1200.160. And there, the Board, all of the regulations under that administrative co-provision may be weighed by the Board. When it finds that, A, the provision from which the variance is granted is not statutorily mandated. And I might say that's conceded by the ILRB in this case. It's not a statutorily mandated time period. B, no party will be injured by the granting of a variance. And here, the one-day to one-business-day difference doesn't injure any party. In fact, in this case, both unions involved voiced no objection to this. And they're the ones, and their members would be the ones that would, if anybody, that would be prejudiced. And they didn't believe, obviously, that their members would be prejudiced. Nor have they come before this court. Nor have they filed briefs before this court because they had no objection to this. So there's really no injury. And if you talk about injury to the public, in the Cook County State's Attorney's Office case, the court said that when you're talking about the public, you also have to talk about, as well as the public interest of the office, that means the office of the State's Attorney in that case, in enforcing its employment rules, its mitigating circumstances. So the public interest, and I might say that second part of the quote is not addressed to your honors, okay? It's not included. But the court in the State's Attorney specifically said there's a public interest involved in terms of the employer as well, and particularly where there's a public entity, such as the State in this case. And C, the rule from which the variance is granted would, in the particular case, be unreasonable or unnecessarily burdensome. And that's true in this case. In this case, there were several continuances grant, agreed to by the parties. The first one was that the parties added 12 additional days to file briefs. So if the one day difference is making so much of a difference here, they added 12 days to the process. They also extended the statutory requirement for the election itself, 35 days. So another 35 days passed. And it wasn't until two months after the petitions were filed that the administrative law judge entered the recommended decision in order. In fact, in most of the cases before the ILRB, there are several continuances granted in various stages, none of which are to the prejudice. Here you have literally one day. And that one day actually, although it was three hours in the State's Attorney's case, the facts are almost exactly the same. It was a three-hour, they filed the pleading three hours after the close of business. So it wasn't filed until the next day. And so there's really, in the State's Attorney's Office, there's a one-day delay as well. And in there, the court held that an agency abuses its discretion, which is the standard we're talking about here, whether the discretion was abused, when it imposes a sanction that is unduly harsh in light of mitigating circumstances. And in State's Attorney-like here, they claim, well, we don't do this. This is what we want to set the standard. We don't grant these continuances. Well, there's a long explanation in Pages 13 and 14 in the State's Attorney's case, which is at 292 Illinois Ave. 3rd on Pages 13 and 14, where the board in that case acknowledged that there are cases where, quote, the policies of the act would be better served by a post-hoc granting of an extension for responding to the complaint. And Section 1200.160 expressly permits the board to waive its rules, and a contrary interpretation of the rule would be plainly erroneous. They refer to the dual public interests, which on Page 22. The court concluded that the provision which deems the allegations of the complaint to be admitted and a hearing be waived. The board apparently failed to consider this crucial aspect of the issue and imposed a sanction that was unduly harsh in light of the mitigating circumstances of this case. Mitigating circumstances in our case are even more mitigating, I respectfully submit to the court. And why are they more mitigating? They are more mitigating because in this case, as you know, the exceptions were put in the internal mail system of the state of Illinois at 1 p.m. Now, when you say internal mail system, you don't mean what we call pwning. No. This is where you put stuff out to be mailed. And the people came and picked it up. So, you know, then they left. At 2 o'clock they went home and they took all the stuff that they had and they put it to a vault and they mailed it when they got back on Tuesday morning after New Year's Eve. With no notice to anyone that they were going to be doing it. Exactly. And this is not a case of negligence or inadvertence or mistake. This is not that kind of a case. I'm not pleading the mercy of the court here. I'm saying that the state attorney involved followed standard operating procedures. And when that was picked up, when it was picked up from that basket or wherever they put it in CMS, right across the street, he had every right to assume that once that was picked up, that it would be mailed that day. There is nothing in this record, nothing, that would impose a knowledge or suspicion or in any way indicate, an indication, that that wasn't going to happen. Counsel, we all three have been trial attorneys. If we had a brief that was due on a specific date, I'd suspect you would do the same thing we would have done, which is drive it to the post office or walk it to the post office and get a certified receipt. Well, being honest with your honor, with the mailbox rule, I give it to my staff that is in the production room and I assume they're going to mail it. Well, that's true. In Chicago, going to the post office is a little different than going to Springfield. I mean, I really do. I give it to them. So far they've been pretty good. I've been practicing 46 years. So far they've delivered everything, at least. I haven't been in this particular case. This is an aberrational case. It's a sui generis case. But I really don't think he messed up. I think he did what they do. They put it in the box. Now, if it hadn't been picked up, I might say, oh. But it was picked up and he had every expectation, every expectation, to believe that that would be placed in the mail that day. So, for those reasons, I respectfully submit that this case, both counsels agreed that the more appropriate, if we prevail, the more appropriate remedy would be a remand to the board to consider the exceptions. So there's no dispute on that. In fact, those weren't even addressed. The merits wasn't even addressed in the briefing of the ILRB. Are you saying that we don't have the authority to simply reverse that finding? Oh, I think you do. But I think that probably the more appropriate relief would be to remand and give the board a chance to review it on its merits. Obviously, I would prefer you just reversing it. But I must, in tandem to the court, say that that's probably the more appropriate relief that should be there. Thank you. Mr. Self. Good morning, Your Honors. I'm Sharon Fursell, Assistant Attorney General, representing the Illinois Lake Relations Board in this manner. The only question here is, did the board abuse its discretion when it applied the rule regarding the filing of exceptions in the same manner that it has been applying that rule consistently from the beginning of the agency's existence, basically? How is discretion involved at all? I mean, the rule's the rule. You either comply with it or you don't. That's right. But discretion is involved in how it interprets the rule and looking at the circumstances and did these circumstances warrant applying the rule in a manner that is going to vary from how the board has decided the rule should be applied to further the purposes of the act. Are you indicating the board already considered whether the exceptions apply? No, no, no. What I'm saying is the rule on service of the document, and maybe I should go back to that. The rule on service of the document, when it's postmarked, I'm sorry, let me go back to that. The board mails out a document when it has the fact of when the document was received. At that point, everybody knows when, for instance in this case, exceptions are to be filed within 14 days. The idea that the board in this case is rewriting that rule is just not true. And it's just not true that basically the rule goes back to the old provision where it shall be added. The board's looking at the rule that is as it is, and it's been this way since 1987 when it was amended. So there's no rewriting of any rule here. The board does what it always does. It looked at the circumstances. Here's our rule. Here's how we've been applying it. Here's our situation here. And does this warrant granting the variance? And then there's certain considerations that go into that. Well, now you've confused me. You have a rule, and a rule is a rule, and now you're talking about variances from the rule. Well, only because that's the next step that came up in this case. Because the board has to have, it may vary its rules when circumstances warrant, or when it deems that to be appropriate. So you can just ignore the mailing rule. I mean, it's got to be postmarked by a date certain under the rule, right? Right. In this case, December 31st. Postmarked December 31st. Yes, and that's what, even though CMS is now arguing that wasn't the case, and that it was actually January 2nd, CMS never argued to the board when it asked to have its exceptions accepted that it was actually due on January 2nd. Which is different than what happened in the city of St. Charles, where the parties made that argument to the board. Here they never argued that to the board, and so CMS has forfeited that argument because they didn't argue it to the board. And, you know, even if that's not the case, under the rule as it is now, it was due on December 31st as CMS acknowledged. You know, and CMS, not only did they not argue that it was due on December 31st, but on some other date. It acknowledged that these exceptions are due on December 31st. And the rule was the rule then, and the rule, you know, it hasn't changed at all. So if they had an idea that the rule was being wrongly applied and interpreted, that's where they had their chance to bring it up. And due means put in the U.S. mail, correct? Excuse me? When you say it was due on the 31st of December, it had to be mailed on the 31st. Right, postmarked on. Okay. Because the postmark is... And what variance do we talk about then? It's either got to be stamped by the U.S. Postal Service on the 31st, or it doesn't. Right. What's the variance? Well, that's only, you know, if there were mitigating circumstances that CMS is arguing, then if the, you know, the board would maybe accept the exceptions. It wouldn't change the due date. It doesn't change the due date. The due date is going to be the due date. Is that what you're saying? Well, the board's interpretation and enforcement of its rules is always discretionary to the board, unless there's... So you can just say, well, we're not going to enforce the rules in this case, but over here we're going to enforce the rules strictly. The board has that authority? If... You know, that would be, that's where discretion comes in, though. I don't, I mean, that's... Well, let me explain. Okay. Let me explain the very, very substantial reason for trying to nail this point down. Right. Our standard of review in these kind of cases normally is somewhat deferential to decisions made by an agency. Yes. When they apply whatever thought processes the agency applies to come to a certain decision. Right. Basically, this case should be about, was it postmarked on December 31st? If it was, he wins. If it wasn't, he loses. Now you're saying, well, but we apply our discretion to that. Which completely changes our standard of review. No, I... Then it's an abuse of discretion analysis. I'm not understanding. Right. I mean, the board... This is an abuse of discretion analysis. When the board denied, dismissed the exceptions, did it abuse its discretion? And it didn't abuse its discretion because the exceptions were not filed on the date that they were due, which the rule on exceptions provides, you know, it provides no exception for not filing your exceptions. They're deemed late. And so the board looks at that and they didn't meet the due date. Okay. So you're not saying that the board exercises discretion on whether or not to consider a late filing. You're saying the rule is the rule, it's filed late, they don't consider the filing, and then the ultimate decision of the board is by the board's discretion. The decision not to accept the late filing? There's no discretion in not accepting the late filing. Is that what you're saying? Well, I'm saying it's when they look at, they apply the rule, the rule says... It's filed late, we don't consider it. Unless, I mean, they're not going to consider it. They can consider it on their own motion if they wanted to or... I mean, so there's... Completely discretionary with the board whether or not they allow the late filing. Whether or not they feel like it. Well, but there would be certain, there would be standards. What standards? Looking at, and that then gets into whether or not there were circumstances that... Were the standards published? The standards are in the rules in section 1200.160. It sets out what they're going to look at to grant variance on it. And in this case, those standards just certainly weren't met. All right, thank you. Okay. But the board, of course, disagrees that... It's interpretation of the service by mail rule is completely wrong and rewriting. I think, plainly, the rule is not what it used to be, which was three days shall be added, which was then... Everybody knows when you've mailed, so now we know. We're going, basically, by date of mailing, it's adding three days. Now, instead, it's the fact of receipt because you're counting... You're asking, when was this received? If we don't know when it was received, then we're going to add three days to that, and that's how we're going to determine. Now, if you could show that it was received some day beyond that three days, that would extend the filing date. But it definitely is premised on the date of receipt of the document, and that's what starts the clock running. And the date of receipt here was? The date of receipt here was December 17th, as CMS acknowledged. And so add that 14 days in, and then there's where you get to your December 31st due date. So the board didn't abuse its discretion when it applied the December 13th date because that's just applying the rule to that fact. And we're back to where the staff kept asking. I'm afraid I just confused everybody. Well, these areas are very confusing when we don't work in them on a daily basis. I agree with that. And that brings up the fact here that this rule applies in a lot of situations before the board because what it does is it processes cases. Somebody files a representation petition, times start to run, and different deadlines, for instance, for receiving position statements, the employer's position on whether the exception is correct, then lists for elections, who would be voting in the election. All those things, it comes into place. You've got a lot of different times when this rule is going to be applied. So that's what the board is considering as well, is the system that it's administering under the Labor Relations Act. So if this document was due December 31, under what circumstance would you ever apply the mailing rule? Well, if it was sent out, and for instance, in this case, the board had the green card, knew what date it came in. But suppose somehow you can't track that, or for whatever reason, or something didn't go out with the tracking, the green card. And so you don't necessarily know the fact of delivery. And if the addressee can come back and say, well, I've got evidence that we received it five days after it was mailed, or ten days after it was mailed. And that's then where they would get that extended date. Now, if they couldn't come back with that, and if there was just no evidence at all of when something was received, now you've got your three days. And so that solves that problem with things going through the U.S. Post Office. And in this case, the document was actually received on what date? December 17th. No, I mean the... Oh, the exceptions. The exceptions. Fourteen days later. No, I'm sorry. That was actually received in the Board's offices on January 5th. Because it was postmarked January 7th. The Board received it three days later. And that's where... I mean, that's the utility of that rule. There's going to be times. And you need to address that. And you need to be fair to the addressee. That they can come back, unlike what the rule used to say, which was, shall be added, and it didn't include the language that allowed that to be overcome by anyone. So this is probably a little more... Well, it probably reflects more what goes on in the world. And from that standpoint, better effects processing cases. As to then CMS's argument that the Board should have granted a variance here, there's three... You know, the Board looks at those three factors. First, was it statutorily mandated at this time period? And nobody's arguing that. And secondly, there's the harm. And whether or not, in this particular case, to apply this rule would be unreasonable and burdensome. Even if the parties... This is a one-day delay. And contrary to what CMS is characterizing, this case, the hearing and everything went forward in a good manner. It was tightly run. The case was managed well. And there was an ALJ decision in pretty short order, given that there's the filing, and then they get the letter that says here's your hearing date. The employer gets to respond. And now you've got your... And this was two petitions that were consolidated. So you've got all of that going on as well. And the hearing is held. And as I pointed out in my brief, the Labor Relations Board does not set a time period in which the ALJ has to have the decision out. It just says expeditiously. But the Educational Labor Relations Board, which has the same process and analogous rules to govern that process, sets forth the ALJ needs to have that decision out in 21 days unless there's some... If it's a big case, if for whatever reason more time is needed. It may be complex and a long hearing. And even though... The ALJ here complied with that rule. And so to say that, oh gee, this was a long process, is just not accurate. It was done probably as expeditiously as what the parties obviously wanted since they asked for a little extension of time, which was granted to them by the ALJ. So it was a good process that got an ALJ's decision out to the parties. And at that point then, it's up to the parties to make their decisions and make sure that things happen in the way that they need for them to happen. The board has an interest in protecting the integrity of its rules. And there is a public interest. There's a public employee interest, a public employer interest. The board has to consider the public interest, which Section 2 puts forth as... There's a public interest in an orderly and peaceful and expeditious process. And the board has to consider that. And that's a legitimate public interest. And the public is basically the third party in this whole relationship. So I think that the board does a serious job of considering that, considering that all of these are public employees and affect the provision of services to the public. So all those things need to be considered. Here, it's unfortunate that CMS's mailroom didn't take the mail to get it postmarked. But to say that this was a serious mitigating circumstance I think is really kind of swimming upstream. Case law is that lawyers are responsible for what goes on in their office. And everybody fears this. What are we? I'm still stuck with Justice Atkinson's question. What are we to make of the fact that the board is applying a rule which says 14 days or a rule which says we have these exceptions? I don't understand. The board has discretion in the interest of enforcing the Act if a circumstance warranted. What would be the circumstance that would warrant it? Well, that's a good question. Failure to get a postmark on New Year's Eve doesn't rise to that. I can't really make a decision for the board. Can you think of any circumstances where it's going to come? Well, it's... The court in Cook County State's Attorney did... Actually, back in the early case 87 in Ray Duritz, and that was regarding defaulting on an answer. It's not the exact same analogy. But you had, for instance, somebody proceeding under the mistaken impression given by a board agent handling the case that all was well with the case. So in that circumstance, or if you had a pro se person who wasn't familiar at all with administrative and procedures and just simply didn't understand. But I can't decide that for the board ahead of time. But this mailing, dismissing mailing, has not been... Well, by the same token, had the CMS lawyer known that the pony delivery people were going to knock off early for New Year's Eve, I mean, if he'd known that, we wouldn't be here, right? That may well be true, but... I mean, under those circumstances, you'd walk over to the post office and front 44 cents to the state of Illinois and put it in the mail, right? I should think so. Right. But he didn't know that the normal system was going to break down in anticipation of New Year's Eve revelry at 2 o'clock in the afternoon, right? That's what he presented to the board. However, you know, it's New Year's Eve for everybody. Where is the Illinois Labor Relations Board located? In Springfield? Yeah. Now they are up by the fairgrounds where Natural Resources is. They moved from... they were downtown here. And CMS is across the street from the Stratton Building, right? Okay, so we're talking about... See, I mean, that's, you know, I mean, if you suspect that it's a holiday, and I don't know why... Well, it's not a holiday. Well, New Year's Eve. It's not a holiday. No, it's not. I mean, it's 9 to 5 days. So there's no reason why you couldn't, you know, go to the post office. Well, there's also no reason you shouldn't be anticipating that, like yourself, everybody else is going to be working until close of business. I agree with that. I mean, well, because... but meaning the board. There's no reason you shouldn't anticipate that the board is going to be working... Well, there's no reason you shouldn't anticipate that CMS isn't going to be working... But that's your own agency, and that's what cases say. My point is, I'm certain, as I'm sitting here today, that the Director of Central Management Services did not send out a blast email or fax to all the employees saying, hey, it's New Year's Eve today. Let's all knock her off early at 2 o'clock this afternoon. That didn't happen. Something else intervened to let these particular people, employees of CMS, go off early and not do their job until closing time. And how would you, sitting as a lawyer over in the Stratton building, know that? But it is... I mean, the cases are that, you know, sit-downs in office procedures are... whether it seems fair or not. Well, if your board has discretion, how do we determine what's fair? You determine what's fair by... what's fair... what is going to be fair to everyone? Is an entity like CMS that is large... is that a different standard than what some other small... smaller entity that isn't going to have this... if they came and said, well, you know what, there's 15 of us here, but how could we know? You'd look askance at that. Thank you. Counselor, your time is up. In answer to several of your questions, if this court does not adopt the City of St. Charles case, which was decided, by the way, after all this occurred, so that's why we brought it up to the courts at this point in time. But if this court doesn't adopt the City of St. Charles, which would result in a reversal and remand, it is an abusive discretion standard. There are two discretionary acts they could have taken. One, as stated, that they heard it on their own motion, and that's under Rule 1200.135. And in two places they refer to hearing it on their own motion. Even if there are no exceptions filed, none, or in this case if they were late, they could have heard it on their own motion. Number two, and most importantly, is the variances that can be granted and are granted routinely. They're granted. They waive these rules when they feel like it, and in the exercise of their discretion. Where they don't, the courts have called on the state's attorney's office. You ask, what example? What would be an example? We have an example. It's in the state's attorney's office. They filed, in essence, it went over to the next state, so they filed one day late. One business day late. Same has occurred here. And the court there held that it was an abuse of discretion based upon the same arguments that are being made here. Now... Counsel, excuse me if I'm not computing or using the calendar correctly because I don't have it in front of me. Aren't you getting two mailing rules? Aren't you getting the benefit of two extensions of time? If your argument's right, it was due January 2nd, it wasn't received until January 5th? No, there's the mailbox rule in this state and under these rules. That's uncontested. That it's filed as of the date it's mailed. So this was mailed on January 2nd. January 5th has nothing to do with it. It's just like filing here. When you file a brief, it's a postmark. It's a mailbox rule. It's the same rule. So we're not getting two extensions of time. And I don't think we're getting any extensions of time. I think that because the rule doesn't say anything about actual receipt, and it only refers to receipt, no receipt or receipt after the due date, giving the addressee a chance to extend the time to file. But there's an automatic three-day rule. We come within it. There's no extension of time if you adopt City of St. John's. If you don't, then they could have heard under a motion which is, and by the way, it's admitted that this is under abusive discretion standard of page 9 of their briefs. I might also point out that the Supreme Court of Illinois has specifically said that an erroneous construction, this is in City of Freeport, 135 Illinois 2nd, 499, and this is at page 24. Sorry. I will get you the page on it. But it's an erroneous construction of a statute by an administrative agency. However, it's not binding upon the revealing court. Revealing courts may not rubber stamp administrative decisions. They'd be inconsistent with statutory mandate, or they'd frustrate public policy in the underlying statute. Similarly, in the City of St. Charles, it says, the agency's interpretation will be rejected if it's unreasonable or erroneous. I contend both. It is an intellectual matter, Your Honor. I contend both are applicable in this case. There's absolutely, it was in my, I respectfully submit that it was a clear abusive discretion, even if you find that we were late under the circumstances. And it's interesting. Counsel said, well, this is, the other case was about default of an answer so that everything was admitted. Well, that's what happened here when the exceptions weren't deemed timely. Then the ALJ's decision stood. So, I mean, it's the exact same unfortunate and tragic result that that's what happened here. So, I respectfully submit that the statute allowed the filing on January 2nd, as written and as interpreted. And if Your Honors don't agree or don't deem it necessary to reach that conclusion, that they should have taken, it was an abusive discretion for them not to take it on their own motion, and even more importantly, it was clearly an abusive discretion based upon the State's Attorney's case. Thank you, Your Honor. Counsel, we'll take this matter under advisement and recess.